| | |
|---|---|
| WAYNE PEDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

Wayne Pederson ("Pederson" or "plaintiff"), a federal inmate, filed this action seeking relief pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. Compl. [D.E. 1]. On November 21, 2013, the United States filed a motion to dismiss for failure to effect service pursuant to Federal Rule of Civil Procedure 12(b)(5) [D.E. 4]. On February 21, 2014, the court reviewed the complaint pursuant to 28 U.S.C. § 1915A and dismissed the complaint without prejudice for failure to state a claim upon which relief can be granted [D.E. 11]. On January 8, 2015, Pederson filed a motion to amend his complaint [D.E. 13]. Defendant has not filed any response to the motion, and the time within which to do so has expired.

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within twenty-one days after service, or, if the pleading requires a response, within twenty-one days after service of the response or service of a motion under Rule 12(b), (e), or (f). See Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading only with the written consent of the opposing party or with leave of court. See Fed. R. Civ. P. 15(a)(2). A court should freely grant leave to amend a complaint or answer unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would

[be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quotation omitted); see Foman v. Davis, 371 U.S. 178, 182 (1962).

Where, as here, a plaintiff requests leave to amend his complaint after the court has entered judgment against him, the "motion to amend is evaluated under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." Laber, 438 F.3d at 427. "There is one difference between a pre- and a post-judgment motion to amend: the district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b)." Id.; see Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 470 (4th Cir. 2011). "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)." Katyle, 637 F.3d at 471.

First, the court reviews Pederson's proposed amended complaint for futility. "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Id. The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

2

Pederson's amended complaint incorporates by reference the factual allegations of his original complaint. Am. Compl. [D.E. 13] ¶ 26. Pederson is currently incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC-Butner"). Id. ¶ 10. However, the actions giving rise to Pederson's complaint occurred when he was housed at the Low Security Correctional Institution ("LSCI") in Butner, North Carolina. Initial Compl. ¶ 2; Am. Compl. ¶ 6.

Pederson has "a 34-year history of category 3 diabetes, a 12-year history of cardiac disease (with seven myocardial infarctions) and Parkinson's disease. He also suffered from osteomyelitis and had Charcot[]'s deformity of one of his left toes." Initial Compl. ¶ 7. "Some time prior to October 24, 2011, Plaintiff was engaged in cleaning his cell when he suffered a contusion to his right great toe (hereinafter 'Toe Wound')." Id. ¶ 15. On October 24, 2011, during a medical appointment, Pederson "complained to [defendant Mercado] that the Toe Wound was inflamed and painful" but defendant Mercado "did not examine the Toe Wound or prescribe any treatment for it." Id.

> [C]ontinuing through November 9, 2011, the Toe Wound became more swollen, more discolored and much more painful. By November 9, 2011, Plaintiff was suffering from infection, edema and erythem[]a in the right lower leg and foot, as well as fever and unexplained weight loss of more than 15 lbs. During this period between October 24, 2011, and November 9, 2011, Plaintiff repeatedly sought medical assistance from Unidentified Healthcare Employees making regular rounds through the SHU, but despite his repeated requests, Plaintiff received no diagnosis or medical care from said Unidentified or any other Healthcare Employees from October 24, 2011, to November 11, 2011.

Id. ¶ 16. On November 9, 2011, Pederson "collapsed in the shower stall in his . . . cell." Id. ¶ 17.

On November 11, 2011, a physician examined Pederson and transferred him to a local hospital, where Pederson

> was found to be suffering from a right diabetic foot infection due to methicillin-resistant Staphylococcus aure[us] septicemia (hereinafter "MRSA"). Plaintiff was treated with antibiotics, and the Toe Wound was drained by incision. Nevertheless, the MRSA infection was too advanced, requiring that Plaintiff's right great toe be surgically removed on November 22, 2011. Said removal did not halt

3

the worsening inflammation or infection, and Plaintiff had his right leg amputated below the knee on November 23, 2011.

Id. ¶¶ 17–18. Pederson asserts that if he had been "properly diagnosed" by the LSCI medical staff or if the medical staff had "properly responded to [his] requests for treatment," his amputations would not have been necessary. Id. ¶¶ 22–23.[1]

To the extent Pederson continues to seek relief pursuant to the FTCA, the court denies his motion to amend as futile. See, e.g., O'Neil v. Anderson, 372 F. App'x 400, 402 & n.1 (4th Cir. 2010) (per curiam) (unpublished); Hill v. United States, No. 5:08-CT-3070-D, 2010 WL 3075495, at *14–15 (E.D.N.C. Aug. 5, 2010) (unpublished) (collecting cases); Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676–77 (W.D.N.C. 2004); Moore v. Pitt Cnty. Mem'l Hosp., 139 F. Supp. 2d 712, 713–14 (E.D.N.C. 2001); Stevenson v. N.C. Dep't of Corr., 210 N.C. App. 473, 474–77, 714 S.E.2d 435, 436–37, appeal dismissed, 707 S.E.2d 234 (N.C. 2011).

To the extent Pederson seeks to amend his complaint to obtain relief pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), his claims against defendants Mercado, Brooks, and Neri are not futile.[2] Moreover, Pederson's claims against these defendants do not appear to be unduly prejudicial or brought in bad faith. Thus, to the extent Pederson seeks to amend his complaint to assert a Bivens claim against these defendants, the court

---

[1] Because Pederson only incorporated the "[s]tatement of facts" from the initial complaint, it is unclear whether he still seeks $10 million in damages, see Initial Compl. ¶ 35, or whether he proceeds only for "declaratory and inju[n]ctive relief." Am. Compl. ¶ 5.

[2] Pederson has not made clear the role that defendants Neri and Brooks played in his medical treatment. Pederson's initial complaint does not mention these defendants but indicates that there were "'Unidentified Healthcare Employees'" involved in his medical care whose "identity . . . is not currently known by Plaintiff." Initial Compl. ¶ 12. Pederson needs to cure this defect by further amendment.

4

grants the motion.

As for the remaining defendants, Pederson has named numerous defendants who are immune from or otherwise not amenable to suit. As for defendants Samuels, Kendig, "John/Jane Does Statutory Agent Officers," "North East Regional Director," and Warden Johns, all current or former Butner wardens or high-level Bureau of Prisons officials, a Bivens claim may not be based on respondeat superior. See, e.g., Iqbal, 556 U.S. at 676; Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978). A supervisor may be held responsible for a subordinate's unconstitutional act only if the supervisor was involved personally or participated in the unconstitutional act. See, e.g., Iqbal, 556 U.S. at 676–77. Thus, a plaintiff must show that (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction" and the plaintiff's alleged constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted). Pederson has not plausibly alleged the direct involvement of these officials sufficient to hold these defendants liable for the acts of others. As for defendant Watts and any other defendant who was involved in reviewing Pederson's grievances, "participation in the administrative remedy proceedings is not the type of personal involvement necessary to state a claim based upon supervisor liability." Abdel–Aziz v. Johns, No. 5:07-CT-3095-FL, 2008 WL 4279696, at *3 (E.D.N.C. Sept. 15, 2008) (unpublished) (collecting cases). Thus, the court dismisses Pederson's claims against these defendants.

In sum, the court GRANTS IN PART Pederson's motion to amend his complaint [D.E. 13], and VACATES the February 21, 2014 judgment pursuant to Federal Rule of Civil Procedure

5

60(b)(6). The court DISMISSES plaintiff's FTCA claim, along with any claim against all defendants other than defendants Mercado, Brooks, and Neri. The court ORDERS as follows:

1. The clerk shall continue management of the action, and serve a copy of this order together with the complaint and summons on defendants Mercado, Brooks, and Neri.

2. The United States Marshal Service shall make service pursuant to 28 U.S.C. § 1915(d).

SO ORDERED. This **20** day of May 2015.

*James Dever*
JAMES C. DEVER III
Chief United States District Judge